[Civil No. 2989. Filed March 23, 1931.]

[296 Pac. 1014.]

LOUIS G. HUMMEL, Appellant, v. CITIZENS' BUILDING & LOAN ASSOCIATION, a Corporation, WILLIAM F. CURTAYNE and MARGARET CURTAYNE, His Wife, and UNIT LAUNDRY, a Corporation, Appellees.

Mr. Louis G. Hummel, *in pro. per.*

Mr. E. T. Cusick, for Appellees.

LOCKWOOD, J.—Louis G. Hummel, hereinafter called plaintiff, brought suit against Citizens' Building & Loan Association, a corporation, William F. Curtayne, Margaret Curtayne, his wife, and Unit Laundry, a corporation, on two causes of action; the first demanding an accounting of the rents, profits, and value of the use and occupation of certain premises, and the second asking that a sheriff's deed to said premises be set aside and the sheriff directed to issue another deed to plaintiff covering the same property. The questions involved are solely those of law, but, in order to determine them, a brief statement of the facts is necessary.

One Ah Moy, who was the owner of a portion of lot 1, block 74, in the city of Tucson, executed a note in the sum of one thousand dollars to the Citizens' Building & Loan Association, hereinafter called the Association, and to secure this note gave a mortgage on said lot 1, which was recorded May 23, 1925. At a later date he gave a note in the sum of $525.64 to Bernard and Leopold Meier for a balance due on a merchandise account, and to secure this latter note executed a second mortgage on the lot to the Meiers, which last mortgage was recorded March 12, 1926. On May 17, 1927, the Association filed suit for foreclosure of its mortgage on the property above mentioned, but the Meiers were not made parties to the action. On July 6, 1927, after sale under the judgment in the foreclosure suit aforesaid, the Association received a certificate of sale for the property, and on January 9, 1928, a sheriff's deed thereto. On June 15, 1928, it contracted to sell the property in question to the Curtaynes, who afterwards assigned their contract to Unit Laundry.

Shortly after the Association had agreed to sell the property, it discovered the existence of the Meier mortgage, and on July 5, 1928, demanded from the Meier brothers a quitclaim deed to the premises, which was refused. Thereafter, and on March 11, 1929, Hummel, to whom the Meier note and mortgage had been assigned, made a demand on the Association for an accounting of the rent and value of the use and occupation of the premises, offering to redeem the property from the sheriff's sale under his assignment of the Meier mortgage above referred to, and on April 3, 1929, filed a notice of intention to redeem in the county recorder's office, copies of which were duly served on all the defendants, and on the sheriff of Pima county. The demand to redeem and for an accounting were refused, and thereafter this suit was brought. At the time of the suit, Unit Laundry tendered plaintiff the entire amount due him on the Meier note and mortgage as aforesaid, including costs and attorney's fee, which tender was renewed at the time of trial.

After hearing, judgment was entered for defendants; the latter being ordered to pay into court the amount due plaintiff on the second mortgage, which they did. After the usual motion for a new trial was overruled, plaintiff appealed to this court.

There are some five formal assignments of error, but we are of the opinion the matter will be best disposed of by discussing certain legal principles applicable to the situation above set forth. It is apparent to us on examination of the brief for plaintiff that there is a misapprehension on his part as to the rights of a second mortgagee under the circumstances above set forth, arising from the confusion of an "equity of redemption" and a "right of redemption." As we said in the case of *Western Land & Cattle Co.* v. *National Bank,* 28 Ariz. 270, 236 Pac. 725:

"The right of redemption after sale on foreclosure is distinct from the equity of redemption after breach of condition and before the sale. The former commences only when the latter ends. One rests on the principles of equity, the other on the terms of the statute."

Plaintiff in this case assumes the position that, since he was not a party to the foreclosure suit, his rights under the junior mortgage were not divested by the foreclosure and sale. This is, of course, true. *Metcalf* v. *Phoenix Title & Trust Co.*, 33 Ariz. 13, 57 A. L. R. 1015, 261 Pac. 633. But we are of the opinion that he is mistaken as to what those rights were.

The "right of redemption" under which he claims is purely statutory in its nature, and he must bring himself strictly within its provisions in order to take advantage thereof. *Collins* v. *Scott*, 100 Cal. 446, 34 Pac. 1085; *Bangham* v. *Michael*, 179 Cal. 390, 177 Pac. 161. As we said, it is not governed by the principles of equity, but by the terms of the statute. At the time the first mortgage was foreclosed and the sale made, the Code of 1913 was in effect. At the time this suit was brought, it had been superseded by the Code of 1928. The sections of the two Codes, however, applicable to the present situation, are practically identical in their language, and we quote, therefore, from the Code of 1928, which reads, so far as applicable, as follows:

"4227. *By Whom may be Made.* Property sold subject to redemption, or any part sold separately, may be redeemed by the following persons or their successors in interest: The judgment debtor or his successor in interest in the whole or any part of the property; a creditor having a lien by judgment or mortgage on the property sold, or on some share, or part thereof, subsequent to that on which the property was sold.

"4228. *Time for Redemption*. The judgment debtor or his successors in interest may redeem at any time within six months after the date of the sale. If such redemption be not made, the senior creditor having a lien, legal or equitable upon the premises sold, or some part thereof, subsequent to the judgment under which the sale was made, may redeem within five days after the expiration of said six months; and each subsequent creditor having a lien in succession, according to priority of liens, within five days after the time allowed the prior lien-holder, respectively, may redeem by paying the amount for which the property was sold, and all liens prior to his own held by the person from whom redemption is made, together with eight per cent added thereto as hereinafter provided.

"4229. *Redemption upon Foreclosure*. In sales upon foreclosure of mortgage or other lien like periods of redemption shall be allowed. If no redemption shall be made by the mortgagor or his successor in interest, creditors having liens upon the premises sold or some part thereof subsequent to the lien so foreclosed, may redeem within the times, and in the order and manner specified in the preceding section.

"4230. *Redemption by Subsequent Lienholder; Notice*. To entitle a subsequent lienholder to redeem he shall, within six months after the sale, file with the county recorder of the county in which the sale is made a notice in writing stating that he intends to redeem, and specifying his lien and the amount thereof, and its order of priority, and shall deliver a copy thereof to the sheriff of said county."

It will be seen upon examining these sections that the statutory right of redemption must be exercised within a certain time or not at all. Plaintiff was a creditor having a lien by mortgage on the property sold, and by virtue thereof was entitled to redeem. Whether or not he was a party to the foreclosure suit neither increased nor diminished his statutory right of redemption. If he desired to exercise it, he could do it only upon the terms and in the time set

by the statute. It is evident from the foregoing statement of facts that the period of redemption had expired long before he moved in the matter.

There is considerable discussion in both briefs as to the statute of limitations and laches. We think they have no place in the consideration of this point. If the right given by the statute is not exercised strictly according to the terms of the statute, it is lost, and it is obvious that it was not so exercised. As we stated in the case of *Western Land & Cattle Co.* v. *National Bank, supra,* when a junior lienholder is not made a party to a foreclosure proceeding, he has two rights. He may either sue for a foreclosure of his lien, or, if he desires, he may take advantage of the redemption statute and redeem according to its terms. If he fails to follow the latter course the former still remains open to him.

We are of the opinion the trial court correctly declined to order an accounting or a cancellation of the sheriff's deed theretofore issued, for the reason that plaintiff had allowed his statutory right of redemption to expire. His remedy by foreclosure, however, was still available.

Since the Unit Laundry voluntarily tendered the plaintiff the amount due on his mortgage, and no appeal was taken from the order directing it to pay that amount into court, we need not consider whether such order was technically erroneous or not.

The judgment of the superior court of Pima county is affirmed.

McALISTER, C. J., and ROSS, J., concur.